The STATE of Texas, Appellant,

v.

Gabriela TERRAZAS, Appellee.

No. 08–95–00314–CR.

Court of Appeals of Texas,
El Paso.

May 21, 1998.

Rehearing Overruled June 17, 1998.

Jaime E. Esparza, District Attorney, El Paso, for Appellant.

Matthew DeKoatz, El Paso, for Appellee.

Before LARSEN, McCLURE and CHEW, JJ.

## OPINION ON REMAND

LARSEN, Justice.

Appellee Gabriela Terrazas was indicted for the offense of tampering with a governmental record arising out of allegedly false entries she made in applications for government benefits under the Aid for Families with Dependant Children, food stamp, and Medicaid programs. The trial court entered an order quashing and dismissing the indictment with prejudice and also entered an order suppressing Terrazas's statement. The State appealed both orders. Upon original submission, we reversed both orders. The Court of Criminal Appeals reversed and remanded. Upon remand, we reverse the orders of the trial court.

## PROCEDURAL HISTORY

Terrazas filed a pretrial motion to dismiss the indictment and a motion to suppress a statement she made to a welfare fraud investigator. She contended that her rights to due process and due course of law under the United States and Texas Constitutions were violated because the El Paso County District Attorney's office was compensated by the

Texas Department of Human Services ("DHS") for accepting and prosecuting cases DHS submitted. Terrazas contended in her motion to suppress that her statement had been involuntary. On September 15, 1995, the trial court held a pretrial hearing on Terrazas's motions and granted both by dismissing the indictment with prejudice and suppressing Terrazas's statement.

The State appealed and we originally held that the trial court lacked authority to dismiss the indictment with prejudice because a trial court is not authorized to do so except under certain circumstances delineated in *State v. Johnson*[1] and *State v. Frye*.[2] We found that Terrazas's complaints did not fall within the categories stated in those authorities, and therefore determined that the trial court could not dismiss the indictment against Terrazas with prejudice without the State's consent.[3] The Court of Criminal Appeals, however, found that the circumstances set out in *Johnson* and *Frye* are not exclusive, but illustrative and reversed and remanded to this court for a determination on the merits of Terrazas's due process and due course of law allegations.[4] We also originally reversed the trial court's order suppressing Terrazas's statement, but the Court of Criminal Appeals did not reach the suppression issue. In compliance with the instructions of the higher court, we will address Terrazas's due process and due course of law allegations relative to the indictment, and revisit the suppression issue in this opinion on remand.

## DISMISSAL OF THE INDICTMENT

In the mid 1980s, DHS contracted with the El Paso County District Attorney's office under a United States Department of Agriculture program to provide $433 to the District Attorney's office for each welfare fraud case the Inspector General of DHS referred and the District Attorney prosecuted. DHS would pay the funds only if the prosecution resulted in deferred adjudication, conviction, or acquittal. The contract did not require DHS to pay for a dismissed case. The number of welfare cases the District Attorney accepted increased significantly between 1991 and 1994. The District Attorney's screening section chief testified that she did not consider the compensation when making welfare fraud intake decisions. She explained that the increase was due mostly to a policy change in accepting the welfare fraud cases under the current District Attorney's administration. The previous administration refused the cases as felony cases and referred them to the County Attorney for prosecution, whereas the current District Attorney accepted the cases as either misdemeanor or felony cases.[5] DHS compensated the District Attorney whether the cases were prosecuted as felonies or misdemeanors.

The State contends that the trial court abused its discretion by granting Terrazas's motion to dismiss the indictment with prejudice. Terrazas, on the other hand, contends that the trial court's order dismissing the indictment with prejudice was an appropriately fashioned means to neutralize the taint of alleged due process and due course of law violations. Dismissal with prejudice is a drastic remedy "rarely seen in criminal law, even for constitutional violations."[6] Remedies should be tailored to remove the harm caused by the alleged constitutional violation.[7] Some constitutional violations, however, by their nature confer authority on the trial court to dismiss when dismissal is neces-

1. 821 S.W.2d 609, 612 (Tex.Crim.App.1991).

2. 897 S.W.2d 324, 330 (Tex.Crim.App.1995).

3. *See State v. Terrazas*, 933 S.W.2d 263, 267 (Tex.App.—El Paso 1996), *rev'd*, 962 S.W.2d 38 (Tex.Crim.App.1998).

4. *State v. Terrazas*, 962 S.W.2d 38, 41–42 (Tex. Crim.App.1998).

5. In October 1993, the District Attorney took over prosecution of the vast majority of misdemeanors, including welfare fraud cases, from the County Attorney. *See* TEX. GOV'T CODE ANN. §§ 43.120(c), 45.171 (Vernon Supp.1998).

6. *State v. Terrazas*, 962 S.W.2d 38, 44 (Tex.Crim. App.1998) (Keller, J. dissenting) (quoting *Reed v. Farley*, 512 U.S. 339, 368, 114 S.Ct. 2291, 2307, 129 L.Ed.2d 277, 300 (1994) (Blackmun, J. dissenting)).

7. *Id.* (citing *United States v. Morrison*, 449 U.S. 361, 366–67, 366 n. 2, 101 S.Ct. 665, 668–69, 668 n. 2, 66 L.Ed.2d 564 (1981)).

sary to protect the constitutional right.[8] The question the Court of Criminal Appeals has remanded for this court to consider, then, is whether dismissal with prejudice is necessary in this case to protect the alleged violation of Terrazas's constitutional rights. We find that dismissal with prejudice is not necessary to protect Terrazas from the particular violations she claims.

■ First, Terrazas contends that the El Paso County District Attorney's office violates section 41.004 of the Texas Government Code when it accepts payments from DHS to prosecute welfare fraud cases. Section 41.004 provides:

> A district or county attorney, either before or after the case is tried and finally determined, may not take from any person a fee, article of value, compensation, reward, or gift, or a promise of any of these, to prosecute a case that he is required by law to prosecute or as consideration or a testimonial for his services in a case that he is required by law to prosecute.[9]

Although the language of section 41.004 arguably applies to compensation or a reward paid to an individual rather than to the office of the District or County Attorney, we find that we do not need to determine the section's applicability to the situation at hand because there is no provision authorizing dismissal of the indictment for a violation of the statute. Statutory violations confer authority to dismiss an indictment with prejudice only where the statute so provides.[10]

■■ Terrazas also contends that her due process rights[11] were violated by the District Attorney's alleged misconduct in accepting compensation for prosecution of welfare fraud cases. Allegations of prosecutorial misconduct rise to the level of a due process violation only if the misconduct significantly compromises the fundamental fairness of the proceedings.[12] In this case, the payments to the District Attorney's office, even if they influenced the office to take questionable cases, are buffered by the fact that Terrazas received the benefit of grand jury screening uninfluenced by the payments.[13] Moreover, Terrazas bears the burden of establishing that the compensation influenced the decision to prosecute her if she is to establish a due process violation. The chief of the El Paso County District Attorney's screening section testified that the compensation did not enter into the decision to prosecute welfare fraud cases, and her testimony was uncontradicted. Accordingly, Terrazas failed to demonstrate any significant compromise in the fundamental fairness of the proceedings against her resulting from the challenged payments.

■ Finally, even if Terrazas had shown a due process violation, it would not be necessary in this case to dismiss the indictment with prejudice in order to remove the harm. Remedies should be tailored to remove the harm caused by the constitutional violation.[14] The harm alleged in this case is influence in the decision to prosecute based on the DHS payments for prosecution of welfare fraud. The taint, if any, could be removed by requiring the District Attorney's office to decline the payment and then determine whether to prosecute the case.

In light of the above analysis, we find that the trial court abused its discretion by dismissing the indictment with prejudice and we sustain the State's first point of error.

### SUPPRESSION OF TERRAZAS'S STATEMENT

In Point of Error No. Two, the State contends that the trial court abused its discre-

---

8. *Terrazas*, 962 S.W.2d at 44 (Keller, J. dissenting) (giving examples of double jeopardy and speedy trial violations).

9. TEX. GOV'T CODE ANN § 41.004 (Vernon 1988).

10. *Terrazas*, 962 S.W.2d at 44 (Keller, J. dissenting).

11. In this case, the Texas Constitution does not appear to provide protections beyond those in the federal constitution, accordingly, we analyze Terrazas's due process and due course of law

allegations under the same analysis. *See Terrazas*, 962 S.W.2d at 45 n. 3 (Keller, J. dissenting).

12. See *Greer v. Miller*, 483 U.S. 756, 765, 107 S.Ct. 3102, 3108–09, 97 L.Ed.2d 618, 630 (1987).

13. *See Terrazas*, 962 S.W.2d at 45 (Keller, J. dissenting).

14. *Morrison*, 449 U.S. at 366–67 and 366 n. 2, 101 S.Ct. at 668–69 and 668 n. 2, 66 L.Ed.2d 564 and 569 n. 2.

tion in suppressing Terrazas's statement. In a written motion, Terrazas sought to suppress all documents executed by her that the State would use in its case. She alleged that they should be suppressed because she was not provided counsel to explain the documents and her potential criminal liability concerning the documents. She also sought to suppress the documents due to her allegation that she was forced to back date certain documents in order for the State to prove its case against her. She alleged the same grounds at the pretrial hearing.

Oscar Rodriguez, an investigator for the Department of Human Services, testified that he investigated a complaint from Terrazas's ex-husband which indicated that the couple's children were living with him during the period from January of 1993 through September 1993. Sometime in the middle of January 1995, he notified Terrazas that he was reviewing her Assistance for Families with Dependent Children (AFDC) and food stamp case and he needed to speak with her in order to clear up some problems. He spoke with her in his office on January 25, 1995 at about 1 p.m. When Terrazas arrived at his office, Rodriguez asked for her identification and explained to her that there was an allegation regarding where her children were living and he then advised her of her *Miranda* rights. He did not specifically tell Terrazas that he intended to turn the case over to the District Attorney for potential prosecution until the end of the interview.

At the beginning of the interview, Rodriguez asked Terrazas about the status of her children. He told her that he needed to know if her children had been living with her all the time because he had information that indicated otherwise. He showed her two applications for assistance that she had filled out in which she had claimed her three children were living with her. During the interview, Terrazas initialed both of the assistance applications, one dated March 17, 1993, and the other dated November 16, 1993 and dated her initials January 25, 1995, the date of the interview. Rodriguez stated that applications for benefits do not contain *Miranda* warnings and applicants are not provided with attorneys when filling out the benefits

application, but we note that the applications do contain a statement, in both English and Spanish, that providing false information can lead to prosecution.

After speaking with her, Rodriguez took a written statement from Terrazas. In her own handwriting, Terrazas filled in the preprinted statement form as follows:

> I did not report that my kid (sic) where (sic) living with there (sic) father for the month of June thr. Sept. 93. In Nov. 93 Martin return (sic) to live with his father. In Aug. 94 Martin came to live with me until Nov. 94.

> . . .

> I did not report thise (sic) information within 10 days. I should have reported this information. I used my food stamp card for Dec. 94.

She signed the form affirming that all the facts and statements contained in it were true and correct. The statement contained *Miranda* warnings above the portion Terrazas filled out. Rodriguez testified that although he had told Terrazas which information was important to put on the form, such as the fact that she did not report the children's residence change within ten days, she had an opportunity to read and change her statement and was satisfied with what she had written. Rodriguez did not tell Terrazas "exactly" what to write on the form, and she had verbally verified to him that the information she was placing on the form was correct.

Importantly, Rodriguez stated that he was not a commissioned peace officer, and had never placed Terrazas in any kind of custody. She was free to go at any time during the interview, she was not promised anything in return for her statement or information, and she never asked to terminate the interview or to consult an attorney.

The trial court entered an order suppressing the written statement of Terrazas. In an oral statement at the hearing, the trial court stated that it was granting the motion to suppress as to the written statement of Terrazas because the statement was made involuntarily.

A trial court has broad discretion in determining the admissibility of evidence, and we will not reverse absent a clear abuse of discretion.[15] On a motion to suppress evidence, the trial judge is the sole and exclusive trier of fact and judge of credibility of witnesses, including the weight to be given their testimony.[16] In that regard, the trial court was free to believe or disbelieve the testimony of each of the witnesses. We do not engage in our own factual review but merely decide whether or not the trial judge's findings of fact are supported by the record. If the findings are supported by the record, we are not at liberty to disturb them. Thus, on review, we only address the question of whether the trial court improperly applied the law to the facts.[17] Should the trial judge's determination be correct on any theory of law applicable to the case, it will be sustained.[18] This principle holds true even if the trial court gives the wrong reason for its decision, especially when the decision concerns the admission of evidence.[19] The Court of Criminal Appeals has held that as part of our review, we must be deferential to the trial court's judgment, not only as to the historical facts, but also as to the legal conclusions to be drawn from the historical facts so long as it appears the trial court has applied the correct standard of law to those historical facts. We should reverse the trial court's decision only for an abuse of discretion; that is, only when it appears that the trial court applied an erroneous legal standard, or when no reasonable view of the record could support the trial court's conclusion under the correct law and the facts viewed in the light most favorable to its legal conclusion.[20]

The determination of whether a confession is voluntary under the Due Process Clause of the Fourteenth Amendment of the United States Constitution is based upon the examination of the totality of the circumstances surrounding its acquisition.[21] Some factors in determining if an accused's will has been overborne are: length of detention; incommunicado or prolonged interrogation; denying access of a family member; refusing a defendant's request to telephone a lawyer or family member; and physical brutality. While the evidence in this case does not appear to demonstrate any of these factors, Terrazas suggests that Rodriguez told Terrazas what to put in her statement and this constituted official overreaching or coerciveness. At the hearing, the trial court showed some interest in this contention. However, the evidence indicates that Terrazas agreed at the time that these contentions were true. If a confession relates what is told to a peace officer, the confession is still voluntary albeit it is not in the exact words of the defendant.[22]

In the present case, we are unable to find any reasonable view of the record that supports the court's granting of the motion to suppress. As Rodriguez was the only witness to relate the events surrounding the taking of the statement, we are unable to find any element of coercion that overrode Terrazas's exercise of free will. Accordingly, it was an abuse of discretion to grant Terrazas's motion to suppress the statement. The State's Point of Error No. Two is sustained.

15. *Allridge v. State*, 850 S.W.2d 471, 492 (Tex. Crim.App.1991), *cert. denied*, 510 U.S. 831, 114 S.Ct. 101, 126 L.Ed.2d 68 (1993).

16. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim.App.1990); *Cannon v. State*, 691 S.W.2d 664, 673 (Tex.Crim.App.1985), *cert. denied*, 474 U.S. 1110, 106 S.Ct. 897, 88 L.Ed.2d 931 (1986); *Laca v. State*, 893 S.W.2d 171, 177 (Tex.App.—El Paso 1995, pet. ref'd); *Lee v. State*, 893 S.W.2d 80, 84 (Tex.App.—El Paso 1994, no pet.); *Chavarria v. State*, 876 S.W.2d 388, 391 (Tex.App.—El Paso 1994, no pet.).

17. *Romero*, 800 S.W.2d at 543; *Laca*, 893 S.W.2d at 177; *Lee*, 893 S.W.2d at 84.

18. *Romero*, 800 S.W.2d at 543; *Laca*, 893 S.W.2d at 177; *Lee*, 893 S.W.2d at 84.

19. *Romero*, 800 S.W.2d at 543.

20. *DuBose v. State*, 915 S.W.2d 493, 497–98 (Tex. Crim.App.1996).

21. *Armstrong v. State*, 718 S.W.2d 686, 693 (Tex. Crim.App.1985).

22. *Bell v. State*, 724 S.W.2d 780, 793 (Tex.Crim. App.1986), *cert. denied*, 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987); *Carrillo v. State*, 634 S.W.2d 21, 23 (Tex.App.—El Paso 1982, no pet.).

## CONCLUSION

Having sustained each of the State's points of error, we reverse the orders of the trial court and remand the cause for trial.