**Ronald Calvin JONES, Appellant**

v.

**The STATE of Texas, Appellee.**

No. 05–04–01062–CR.

Court of Appeals of Texas, Dallas.

Jan. 9, 2006.

Lawrence B. Mitchell, Dallas, for Appellee.

William T. (Bill) Hill, Jr., Crim. Dist. Atty., Charles Patrick Reynolds, Dallas, for State.

Before Justices FITZGERALD, LANG-MIERS, and MAZZANT.

## OPINION

Opinion by Justice FITZGERALD.

A jury found appellant Ronald Calvin Jones guilty of murder and assessed his punishment at seventy years' imprisonment. In a single issue, Jones argues that the district court erroneously required him to produce to the State a written statement he had given his attorney, in violation of the attorney-client privilege. We affirm.

### BACKGROUND

Jones escorted a woman to a club in Dallas. When the pair left, they walked past Joseph Smith, Jr., who made a derogatory comment to the woman. An altercation—described by a number of witnesses—broke out and resulted in Smith's death. Jones gave a voluntary statement concerning the altercation to the police. He was subsequently charged with kicking and beating Smith to death. At trial, Jones argued Smith was the aggressor and that Jones was merely defending himself and the woman. The trial court instructed the jury on these defensive theories, but the jury found Jones guilty of murder.

In this Court, Jones makes a specific evidentiary complaint, arising from his own testimony at trial. Jones argues the State "failed to prove that appellant had intentionally waived or abandoned a known right or privilege." During Jones's cross-examination, the prosecutor repeatedly contrasted Jones's direct testimony concerning the altercation with the statement he had earlier given to the police. The prosecutor identified facts to which Jones had testified, then asked Jones why he had not included those facts in his earlier statement. Among the facts the prosecutor challenged as missing from Jones's statement were:

- that Jones had come up behind Smith while Smith was on top of the woman and had hit Smith in the chest;

- that Smith was on the ground straddling the woman, striking her with his

right hand and trying to hit Jones with his left hand;[1]

- that Smith yelled curses during the incident;
- that after Jones pulled the woman away, he thought the incident had calmed down and dropped his guard;
- that Smith "squared up on" Jones twice, rather than once;
- that Jones looked over his back, afraid Smith was going to attack him;
- that Jones let go of the woman's hand, rather than her pulling away from him;
- that Jones was nervous about another man on the scene who Jones thought might have been with Smith.

The prosecutor then posed this question to Jones:

Q. By the way, in your statement you don't say anything about being afraid to go into a bar or her being afraid and you having to protect her and this oath of manhood you've given to protect her. There is nothing in this statement about that, is there?

A. Now that it's coming back to me— you keep reminding me about the statement. I wrote a statement to my lawyer that indicates most all of that that you've asked me. I don't know why you haven't ever got that.

The prosecutor immediately asked the judge whether he could have the statement (actually a letter to Jones's counsel) referred to by Jones.[2] Defense counsel objected, stated the document was subject to the attorney-client privilege, and asked for a hearing outside the presence of the jury.

Jones testified at the hearing. He stated that when he made the above-quoted statement at trial, he had not intended to waive his privilege or to give the letter to the prosecutor. Instead, Jones stated, he testified about the letter because he wanted "to let [the prosecutor] know that I did state that at a later time in another statement that I had made to my lawyer." The trial court concluded that—to accomplish a waiver—it was not necessary that Jones intend to waive the privilege. Instead, it was only necessary that he intentionally make the statement disclosing privileged information. The court found that Jones had made the statement at trial intentionally. Accordingly, the court ruled Jones had waived any claim to privilege, and the prosecutor was permitted to cross-examine Jones using the contents of the letter.

The letter itself, marked as a court exhibit, was made available to the prosecutor, but was not introduced into evidence and is not part of our record. However, the record does indicate the State questioned Jones concerning three excerpts from the letter:

(1) "So by me trying to keep everybody else cool, I lost my own."

(2) "My intent was to give him what he wanted."

(3) "It seems all of this was meant to happen. I felt it was his time."

### STANDARD OF REVIEW

We review the trial court's decision concerning waiver of the attorney-client privilege for an abuse of discretion. *Carmona v. State*, 947 S.W.2d 661, 664 (Tex.App.-Austin 1997, no pet.) (addressing waiver of attorney-client privilege under evidence rule 511).

---

1. Jones admitted at trial that Smith never hit him.

2. The record indicates Jones wrote this letter to his attorney some three months after Jones had been incarcerated.

### Waiver of Attorney-Client Privilege[3]

 We assume, and the parties do not dispute, that Jones's letter to his attorney was initially protected by the attorney-client privilege.[4] Our evidence rules provide, however, that such a privilege can be waived by the client:

A person upon whom these rules confer a privilege against disclosure waives the privilege if:

(1) the person or a predecessor of the person while holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the privileged matter unless such disclosure itself is privileged.

TEX.R. EVID. 511. In this case, the State sought to benefit from the purported waiver of Jones's attorney-client privilege. Accordingly, the State bore the burden of going forward with evidence that supported a finding of waiver. See Carmona v. State, 941 S.W.2d 949, 953 (Tex.Crim. App.1997). Jones testified under oath at the hearing on waiver. He answered questions posed by both the State and defense.

Jones argues the State did not prove his trial testimony was a knowing relinquishment of his privilege. He argues there is no clear evidence that he "was cognizant of the full ramifications of the attorney-client privilege or that he knowingly and voluntarily relinquished the protections afforded by the privilege." But this is not the standard under which we review a potential waiver of an evidentiary privilege. On the contrary, the above-quoted rule asserts that such a privilege is waived by voluntary disclosure of the substantive privileged matter. See TEX.R. EVID. 511(1).

We have reviewed the record of the trial court's hearing on this matter. The evidence is clear that Jones made the statement at trial voluntarily. The trial record indicates the prosecutor was repeatedly impeaching Jones with his statement to the police: Jones's original statement had not set forth facts supporting the defenses he claimed at trial. In response, Jones told the prosecutor that he had made a second statement that *did* include the facts the prosecutor was asking about.[5] At the hearing, Jones was asked why he made this statement to the prosecutor. He testified that he wanted to let the prosecutor know he had made another statement, in which he had included facts consistent with his trial testimony. We conclude Jones voluntarily disclosed the contents of the letter sent to his attorney. See id.

We conclude the trial court did not abuse its discretion in finding Jones waived the attorney-client privilege when he asserted that the letter supported his defenses and he was surprised the State did not have it.

---

3. Jones frames his issue as a complaint that he was required to produce the letter he had given his attorney. However, the entirety of Jones's argument is focused on the reason he was required to produce the letter: the trial court's finding that Jones had waived the attorney-client privilege that would otherwise have protected the letter from disclosure. Accordingly, our focus is also on the issue of waiver.

4. Jones testified that he wrote the letter "to clarify my side of the story to my lawyer."

5. The three excerpts from Jones's letter that were placed before the jury actually did not support his defensive theories as he claimed they would. Indeed, those excerpts actually contradicted Jones's testimony that he had acted in defense of himself and his companion. In his appellate brief, Jones himself asserts that these three admissions "were antithetical to his claim that he had acted in self-defense, defense of another, or that he was criminally negligent in causing the death of another."

## CONCLUSION

We decide Jones's issue against him, and we affirm the judgment of the trial court.