PD-0019-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 9/9/2015 11:41:47 AM
Accepted 9/9/2015 11:57:54 AM
ABEL ACOSTA
CLERK

No. PD-0019-15, No. PD-0020-15
No. PD-0021-15, No. PD-0022-15

_____

## IN THE TEXAS COURT OF CRIMINAL APPEALS

_____

**State of Texas, Appellant**

**v.**

**Albert G. Hill III, Appellee**

_____

On Discretionary Review from
Nos. 05-13-00421-CR-180, 05-13-00423-CR,
05-13-00424-CR, and 05-13-00425-CR from the
Fifth District Court of Appeals at Dallas

_____

### STATE'S OPENING BRIEF

_____

Charles "Chad" Baruch
Texas Bar No. 01864300
**JOHNSTON ◊ TOBEY, P.C.**
3308 Oak Grove Avenue
Dallas, Texas 75204
Telephone: (214) 741-6260
Facsimile:  (214) 748-9217
Email: chad@jtlaw.com

**District Attorney Pro Tem**
**Dallas County, Texas**

*Counsel for Appellant*

**ORAL ARGUMENT GRANTED**

**Identity of Parties and Counsel**

**Appellant The State of Texas**

*Counsel in the Texas Court of Criminal Appeals and the Court of Appeals:*
Charles "Chad" Baruch
District Attorney Pro Tem, Dallas County, Texas
JOHNSTON ◊ TOBEY, P.C.
3308 Oak Grove Avenue
Dallas, Texas 75204

The Office of the Dallas County District Attorney recused itself after the election of Susan Hawk as DA. The trial court appointed Chad Baruch, who served as Special Prosecutor in the Dallas Court of Appeals, as District Attorney Pro Tem for the case. Hill's brief incorrectly includes Ms. Hawk and her appellate chief as counsel for the State.

*Counsel in the Trial Court and the Court of Appeals:*
Craig Watkins (Mr. Watkins no longer is District Attorney)
Criminal District Attorney
Michael R. Casillas (Mr. Casillas no longer is with the DA's Office)
Assistant District Attorney
Frank Crowley Courts Building
133 North Riverfront Blvd., LB-19
Dallas, Texas 75207-4399

*Counsel in the Trial Court:*
Russell Wilson II (Mr. Wilson no longer is with the DA's Office)
Lisa B. Smith
Donna Strittmatter
Stephanie Martin
Deborah Smith
Assistant District Attorneys
Frank Crowley Courts Building
133 North Riverfront Blvd., LB-19
Dallas, Texas 75207-4399

i

**Appellee Albert G. Hill III**

*Counsel in the Texas Court of Criminal Appeals and the Court of Appeals*:
Michael Mowla
603 North Cedar Ridge, Suite 100
Duncanville, Texas 75116

*Counsel in the Texas Court of Criminal Appeals:*
L.T. Butch Bradt
14015 S.W. Freeway, Suite 4
Sugar Land, Texas 77478

*Counsel in the Texas Court of Criminal Appeals, the Court of Appeals, and the Trial Court:*
George R. Milner III
MILNER FINN PRICE
2828 North Harwood Street, Suite 1950
Dallas, Texas 75201

*Counsel in the Trial Court and the Court of Appeals:*
John C. Hueston
Marshall A. Camp
Alison L. Plessman
IRELL & MANELLA, LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067

*Former Counsel in the Trial Court:*
Royce West
WEST & ASSOCIATES, LLP
320 South R.L. Thornton Freeway, Suite 300
Dallas, Texas 75203

Anthony D. Lyons
LAW OFFICE OF ANTHONY LYONS
320 South R.L. Thornton Freeway, Suite 300
Dallas, Texas 75203

**Trial Court Judge:**

Hon. Lena Levario (judge during trial)
204th Judicial District Court, Dallas County, Texas

Hon. Tammy Kemp (current judge)
204th Judicial District Court, Dallas County, Texas

# Table of Contents

Identity of Parties and Counsel ................................................................i

Table of Contents................................................................................iv

Index of Authorities ........................................................................vi

Statement of the Case................................................................1

Statement Regarding Oral Argument ........................................2

Statement of Issues ....................................................................2

Statement of Facts........................................................................3

    1. After settling family trust litigation, Mr. Hill is sued by his former lawyers and indicated for mortgage fraud....................................4

    2. Mr. Hill alleges prosecutorial misconduct in an effort to avoid paying the $20 million judgment or facing a criminal trial ........................6

    3. A federal court deems Mr. Hill's allegations "supposition and speculation"................................................................9

    4. Relying on the same allegations rejection by the federal court, the trial court conducts an evidentiary hearing and dismisses the indictments ........................................................ 11

    5. The Dallas Court of Appeals reinstates the indictments ......................... 19

Summary of the Argument........................................................20

Argument ....................................................................................21

I. The trial court erred in ordering an evidentiary hearing because Hill failed to establish any constitutional violation ................................24

    A. Hill failed to establish selective prosecution ..........................25

        1. There is no presumption of selective prosecution...........................25

2. Hill never met his "absolute requirement" to show that the DA's Office failed to prosecute a similarly situated defendant........25

B. Hill failed to establish vindictive prosecution ..........................................30

1. Hill relies on a presumption that applies only to trial proceedings ...................................................................25

2. Hill provided no evidence that he was vindictively prosecuted .......32

C. Hill never even really explains his claims....................................................35

D. Hill cannot rely on the trial court's findings of fact ...............................38

E. Hill cannot rely on an adverse inference against the State .....................39

F. Hill cannot rely on public policy concerns ...............................................39

G. Conclusion: The evidentiary hearing should never have occurred .........40

II. The trial court erred in granting Hill an evidentiary hearing because he presented no evidence to support his request .............................................43

III. The trial court erred in dismissing the cases with prejudice ........................49

Conclusion .......................................................................................................54

Certificate of Compliance.................................................................................55

Certificate of Service .......................................................................................55

# Index of Authorities

## Cases

*Attorney Gen. of United States v. Irish People, Inc.*, 684 F.2d 928 (D.C. Cir. 1982), *cert. denied*, 459 U.S. 1172 (1983). .....................................................27

*Blue v. Hill*, No. 3:10-CV-2269-L, 2014 WL 2217334 (N.D. Tex. May 29, 2014) ................................................................................................8, 9, 11

*Bordenkircher v. Hayes*, 434 U.S. 357 (1978)...............................................................22

*Cook v. State*, 940 S.W.2d 623 (Tex. Crim. App. 1996) ..............................................50

*Eleby v. State*, 172 S.W.3d 247 (Tex. App.—Beaumont 2005, pet. ref'd)...............41

*Ex parte Quintana*, 346 S.W.3d 681 (Tex. App.—El Paso 2009, pet. ref'd) ...........41

*Franks v. Delaware*, 438 U.S. 154 (1978) ....................................................................45

*Galvin v State*, 988 S.W.2d 291 (Tex. App.—Texarkana 1999, pet. ref'd).............41

*Gawlik v State*, 608 S.W.2d 671 (Tex. Crim. App. 1980)....................................25-26

*Guzman v. State*, 85 S.W.3d 242 (Tex. Crim. App. 2002)...................................21-22

*In re United States*, 397 F.3d 274 (5th Cir. 2005) ...............................................24, 29

*Jarrett v. United States*, 822 F.2d 1438 (7th Cir. 1987) ............................................26

*Jones v. White*, 992 F.2d 1548 (11th Cir. 1993), *cert. denied*, 481 U.S. 1055 (1993). ..................................................................................................................27

*Neal v. State*, 150 S.W.3d 169 (Tex. Crim. App. 2004) ...........................23, 25, 30-31

*Reed v. Farley*, 512 U.S. 339 (1994) ...........................................................................51

*Saudi v. Brieven*, 176 S.W.3d 108 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) ................................................................................................................38

*Sonnier v. Sonnier*, 331 S.W.3d 211 (Tex. App.—Beaumont 2011, no pet.) ...........38

*State ex rel. Young v. Sixth Jud. Dist. Ct. of Appeals at Texarkana*, 236 S.W.3d 207 (Tex. Crim. App. 2007).......................................................41

*State v. Ford*, 158 S.W.3d 574 (Tex. App.—San Antonio 2005, pet. dism'd).........52

*State v. Frye*, 897 S.W.2d 324 (Tex. Crim. App. 1995) ..................................... 41, 50

*State v. Guzman*, 959 S.W.2d 631 (Tex. Crim. App. 1998) ...............................21-22

*State v. Hill*, No. 05-13-00421-CR, 05-13-00423-CR, 05-13-00424-CR, 05-13-00425-CR, 2014 WL 7497992 (Tex. App.—Dallas Dec. 29, 2014).....2, 19-20

*State v. Johnson*, 821 S.W.2d 609 (Tex. Crim. App. 1991)......................................49

*State v. Newton*, 158 S.W.3d 582 (Tex. App.—San Antonio 2005, pet. dism'd)......................................................................................................53

*State v. Plambeck*, 182 S.W.3d 365 (Tex. Crim. App. 2005)...................................49

*State v. Terrazas*, 962 S.W.2d 38 (Tex. Crim. App. 1998) ......................................53

*State v. Terrazas*, 970 S.W.2d 157 (Tex. App.—El Paso 1998), *aff'd*, 4 S.W.3d 720 (Tex. Crim. App. 1999)...................................................... 41, 52

*Stephens v. State*, 978 S.W.2d 728 (Tex App.—Austin 1998, pet. ref'd) ................52

*United States v. Armstrong*, 517 U.S. 456 (1996) ........................... 22, 23, 24, 26, 28, 40, 41, 45-46, 47, 50

*United States v. Armstrong*, 48 F.3d 1508 (9th Cir. 1995), *reversed*, 517 U.S. 456 (1996)...................................................................................................28

*United States v. Awan*, 459 F.Supp.2d 167 (E.D.N.Y. 2006) ................................42

*United States v. Blackley*, 986 F.Supp. 616 (D.D.C. 1997)....................................42

*United States v. Breslin*, 916 F. Supp. 438 (E.D. Pa. 1996) .....................................52

*United States v. Chem. Found. Inc.*, 272 U.S. 1 (1926) ..............................................23

*United States v. Dean*, 119 F. Supp. 2d 81 (D. Conn. 2000) ...................................42

*United States v. Falcon*, 347 F.3d 1000 (7th Cir. 2003) ...........................................42

*United States v. Falk*, 479 F.2d 616 (7th Cir. 1973) ................................................ 41

*United States v. Fares*, 978 F.2d 52 (2d Cir. 1992) ..................................................27

*United States v. Feurtado*, 191 F.3d 420 (4th Cir. 1999) ........................................52

*United States v. Gamez-Orduno*, 235 F.3d 453 (9th Cir. 2000)............................... 31

*United States v. Gold*, 470 F. Supp. 1336 (N.D. Ill. 1979).......................................52

*United States v. Goodwin*, 457 U.S. 368 (1982)....................................................... 22, 31

*United States v. Goulding,* 26 F.3d 656 (7th Cir. 1994), *cert. denied*, 513 U.S.
1061 (1994) .......................................................................................................27

*United States v. Greenwood*, 796 F.2d 49 (4th Cir. 1986)........................................27

*United States v. Hollywood Motor Car Co.*, 458 U.S. 263 (1982) ............................. 51

*United States v. Jennings,* 724 F.2d 436 5th Cir. 1984) ...........................................24

*United States v. Johnson*, 91 F.3d 695 (5th Cir. 1996)............................................. 31

*United States v. Kerley*, 787 F.2d 1147 (7th Cir. 1986) ...........................................42

*United States v. Lawson*, 502 F. Supp. 158 (D. Md. 1980).......................................52

*United States v. Morrison*, 449 U.S. 361 (1981).......................................................50

*United States v. Omni Int'l Corp.*, 634 F. Supp. 1414 (D. Md. 1986).......................52

*United States v. P.H.E., Inc.*, 965 F.2d 848 (10th Cir. 1992) ...................................27

*United States v. Peete*, 919 F.2d 1168 (6th Cir. 1990).............................................27

*United States v. Penagaricano-Soler*, 911 F.2d 833 (1st Cir. 1990)...........................27

*United States v. Perry*, 152 F.3d 900 (8th Cir. 1998)................................................ 41

*United States v. Peterson*, 652 F.3d 979 (8th Cir. 2011)........................................41-42

*United States v. Slough*, 679 F. Supp.2d 55 (D.D.C. 2010) ........................................52

*United States v. Taylor*, 487 U.S. 326 (1988) .............................................................52

*United States v. Torquato*, 602 F.2d 564 (3d Cir. 1979), *cert. denied*, 444 U.S. 941 (1979) ..........................................................................................................27

*United States v. Webster*, 162 F.3d 308 (5th Cir. 1998) ................................22, 23, 24

*United States v. Zone*, 403 F.3d 1101 (9th Cir. 2005) ............................................47-48

*Wayte v. United States*, 470 U.S. 598 (1985) ..............................................40, 42, 46

*Webb v. Maldonado*, 331 S.W.3d 879 (Tex. App.—Dallas 2011, pet. denied) ..........39

**Statutes and Rules**

TEX. CODE. CRIM. PROC. ANN. art. 2.07 (West 2005) ...............................................53

TEX. R. EVID. 504 .......................................................................................................39

TEX. R. EVID. 513 .......................................................................................................39

**Other Authorities**

Peter J. Henning, *Prosecutorial Misconduct and Constitutional Remedies*, 77 WASH. U. L.Q. 713 (1999) ..........................................................................................28, 40

WAYNE R. LaFAVE, JEROLD H. ISREAL, NANCY J. KING & ORIN S. KERR, CRIMINAL PROCEDURE (3d ed. 2010) .....................................................................31

## Statement of the Case

A Dallas County grand jury returned multiple indictments against Albert G. Hill III and his wife for the offenses of making a false statement to obtain property or credit and securing execution of a document by deception.[1] The State later dismissed the charges against Hill's wife.

Hill filed a motion alleging prosecutorial misconduct and seeking dismissal of the indictments or, alternatively, an evidentiary hearing and discovery to develop evidence of misconduct.[2] Over the State's objections, the trial court determined that Hill was entitled to a hearing "to try to prove" his allegations.[3]

During the evidentiary hearing, Dallas County District Attorney Craig Watkins asserted privilege and refused to testify about his decision to prosecute the case. Concluding that this refusal denied Hill "his right to have a meaningful hearing" on his motion,[4] the trial court dismissed the indictments with prejudice.[5]

---

[1] CR-180-I at 6; CR-181-I at 5-6; CR-182-I at 6; CR-183-I at 6; CR-191-I at 5. Citations to
[2] CR-180-I at 31-67; CR-181-I at 30-66; CR-182-I at 27-63; CR-182-I at 27-63; CR-191-I at 26-62.
[3] 2 R.R. at 30-31.
[4] CR-180-S at 115; CR-182-S at 115; CR-183-S at 114; CR-191- S at 100.
[5] App. 1; CR-180-III at 1100; CR-182-III at 978; CR-183-III at 977; CR-191-II at 577.

1

The State appealed, asserting four issues. The court of appeals sustained the State's second issue, holding that Hill failed to allege facts establishing any constitutional violation and the trial court therefore erred in granting him an evidentiary hearing. *State v. Hill*, No. 05-13-00421-CR, 05-13-00423-CR, 05-13-00424-CR, 05-13-00425-CR, 2014 WL 7497992, at *1 (Tex. App.—Dallas Dec. 29, 2014). Justice Brown authored the opinion, joined by Justice O'Neill; Justice Bridges dissented. Hill now appeals.

### Statement Regarding Oral Argument

The State agrees that oral argument would assist this Court in deciding the federal constitutional standards governing this appeal.

### Statement of Issues

1.     Did the trial court abuse its discretion by granting Hill an evidentiary hearing and dismissing the indictments where he failed to present evidence of a constitutional violation?

2.     Did the trial court abuse its discretion by conducting an evidentiary hearing and dismissing the indictments where Hill's critical allegations lacked any supporting evidence?

2

3. Did the trial court abuse its discretion by dismissing the indictments with prejudice where dismissal without prejudice would have cured the claimed constitutional violations?

**Statement of Facts**

Al Hill III alleges constitutional defects in his criminal prosecution, all of them relating to what he says is "compelling circumstantial evidence"[6] of an effort by former Dallas County District Attorney Craig Watkins to assist Lisa Blue in her federal lawsuit to collect legal fees from Hill. But despite the apparent evidence of his guilt, and even after—

- deposing Blue *twice*,

- deposing her co-counsel, Stephen Malouf,

- reviewing the text messages between Blue and Watkins (and persuading a federal judge to do the same), and

- questioning the three current and former ADAs who worked on his prosecution,

Hill cannot produce a **shred of evidence** that Blue and Watkins **ever** had a **single** substantive conversation about the criminal case—much less that they entered into a conspiracy to indict him just before the federal fee trial. The

---

[6] Petitioner's Brief at 13.

court of appeals properly concluded that Hill's speculative allegations did not entitle him to an evidentiary hearing under established federal law.

**1. After settling family trust litigation, Hill is sued by his former lawyers and indicted for mortgage fraud.**

Albert G. Hill III is the great-grandson of deceased oil magnate H.L. Hunt. In 2007, Hill became embroiled in federal litigation with family members—including his father, Albert G. Hill Jr.—over assets including a sizeable trust.[7] The federal court in the trust litigation sanctioned Hill's father for perjury.[8]

Shortly thereafter, an attorney for Hill's father sent documents to the Dallas County District Attorney's Office suggesting that Hill and his wife, Erin, made false statements to procure a $500,000 loan.[9] The Hills signed documents claiming sole ownership of a $2.8 million house they pledged as collateral for the loan when apparently they owned only a 20% interest in that house.[10]

---

[7] CR-180-I at 36; CR-181-I at 35; CR-182-I at 32; CR-183-I at 32; CR-191-I at 31.
[8] 5 R.R., Def. Exh. 1, DF-PT-3, at 31.
[9] 5 R.R., St. Exh. 1, at 1; 4 R.R. at 44-45, 76-77, 137-38; CR-180-I at 714-74; CR-181-I at 623-83; CR-182-I at 622-82; CR-183-I at 621-81 4 R.R. at 44-45, 76-77, 137-38.
[10] 5 R.R., St. Exh. 1, at 1, C, D.

The DA's Office subsequently received another complaint against Hill, this time from the trustee of the trust owning an 80% interest in the same house.[11] The Office initiated an investigation of the matter.[12]

Meanwhile, Hill hired a team of prominent Dallas lawyers to represent him in the federal trust lawsuit on a contingent fee basis. Those lawyers—Lisa Blue, Charla Aldous, and Steve Malouf—represented Hill until he settled the case.[13] Blue also met with Dallas County ADA Terri Moore in an effort to persuade her not to pursue criminal charges against the Hills. In the meeting, Blue provided Moore with a copy of the federal order concerning perjury by Hill's father. Moore instructed the ADAs running the investigation that Hill's father could not be used as a witness.[14]

After the meeting between Blue and Moore, a fee dispute arose between Hill and his lawyers. The lawyers sued Hill in federal court to collect their fees.[15] Shortly before trial of the federal fee lawsuit, the DA's Office presented the criminal case against Hill and his wife to a grand jury,

---

[11] 4 R.R. at 77-79, 138-40.

[12] CR-S-I at 1-33; 4 R.R. at 140, 148-49. The appellate record also contains two sealed volumes designated in this brief as S-I and S-II. Any reference to documents in the sealed volumes is in the most general terms to avoid any breach of grand jury confidentiality.

[13] CR-180-I at 608-851; CR-181-I at 517-760; CR-182-I at 516-759: CR-183-I at 515-758.

[14] 4 RR at 46-47; CR-180-I at 854-55; CR-182-I at 178: CR-183-I at 178.

[15] 5 R.R., Def. Exh. 1, DF-PT-9, at 1, 38-40.

which issued multiple indictments on March 31, 2011.[16] Hill then asserted his Fifth Amendment privilege during the attorney's fee trial.[17] In January 2012, the federal court entered judgment against Hill awarding his former attorneys more than $20 million.[18]

## 2. Hill alleges prosecutorial misconduct in an effort to avoid paying the $20 million judgment or facing a criminal trial.

In November 2012—while still challenging the $20 million federal judgment—Hill filed unsworn motions in his criminal cases seeking dismissal of the indictments or, alternatively, an "evidentiary hearing and discovery into the issues surrounding the District Attorney's decision to indict this case."[19] By this time, the DA's Office had dismissed the charges against Hill's wife.

Hill says the State stipulated to the "authenticity and admissibility" of his attachments.[20] Actually, the State never stipulated to admissibility. The trial court admitted Hill's Exhibits 1-4 only "for record purposes."[21] And each time the matter arose (at least four times) the State's attorneys said

---

[16] CR-180-I at 6-7; CR-181-I at 5-6; CR-182-I at 6-7; CR-183-I at 6-7; CR-191-I at 5; 4 R.R. at 167-69.

[17] CR-180-II at 1045-57; CR-181-II at 929-41; CR-182-II at 934-46; CR-183-II at 933-45.

[18] CR-180-I at 138-148; CR-180-I at 33.

[19] CR-180-I at 66; CR-182-I at 62; CR-183-I at 62; CR-191-I at 61.

[20] Petitioner's Brief at 38.

[21] 4 R.R. at 26, 30-31.

they only were waiving any authenticity objection—not that they were stipulating to admissibility or waiving other objections.[22]

In his motions, Hill asserted federal constitutional claims alleging that the DA's Office: (1) selectively prosecuted him in violation of his right to equal protection, (2) vindictively prosecuted him in violation of his right to due process, and (3) violated his right to due process by prosecuting him despite a financial conflict of interest arising from campaign contributions by Blue to Watkins. He also claimed that the DA's Office failed to follow its purported policy of permitting a criminal defendant's attorney to address the grand jury.[23]

Hill attached a series of documents to his unsworn motions.[24] These attachments consisted of 44 exhibits purporting to be letters, pleadings, campaign contribution filing forms, website printouts, telephone records, newspaper articles, and other documents.[25] Hill tendered no affidavit testimony in support of his motion.[26] Hill did include shorts excerpts from a few depositions and hearing transcripts. But these excerpts—with two

---

[22] 4 R.R. at 26-31.
[23] CR-180-I at 31-67; CR-182-I at 27-63; CR-183-I at 27-63; CR-191-I at 26-62.
[24] CR-180-I at 31-488; CR-182-I at 27-484; CR-183-I at 27-484; CR-191-I at 26-483.
[25] CR-180-I at 68-488; CR-182-I at 64-484; CR-183-I at 64-484; CR-191-I at 63-483.
[26] CR-180-I at 31-488; CR-182-I at 27-484; CR-183-I at 27-484; CR-191-I at 26-483.

exceptions to be discussed momentarily—had nothing to do with his constitutional claims.

A month later, Hill filed a post-judgment motion in the federal lawsuit making the same allegations and asking that the court vacate the judgment against him based on the purported conspiracy between Blue and Watkins to use criminal indictments to affect the outcome of the federal fee trial.[27]

In his state and federal motions, Hill alleged that Watkins functioned as Blue's "stalking horse" in seeking indictments. Blue has represented Watkins (this representation was the subject of one of the deposition excerpts attached to Mr. Hill's motion[28]), made political contributions to him since at least 2007, and funded a $100,000 SMU scholarship in his name.[29] During the period leading to the indictments, Blue contributed $7,500 to Watkins—out of total contributions exceeding $120,000.[30] She also contributed during that period to the campaigns of numerous other Dallas County office holders—including $10,000 in contributions to one of Hill's former lawyers in this case.[31]

---

[27] *Blue v. Hill*, No. 3:10-CV-2269-L, 2014 WL 2217334, at *2 (N.D. Tex. May 29, 2014).
[28] CR-180-I at 175-183; CR-182-I at 171-79; CR-183-I at 171-79; CR-191-I at 170-78.
[29] CR-180-I at 39; CR-182-I at 35; CR-183-I at 35; CR-191-I at 34.
[30] CR-180-I at 106-13; CR-182-I at 102-09; CR-183-I at 102-09; CR-191-I at 101-08.
[31] CR-180-I at 850; CR-182-I at 758; CR-183-I at 757.

Hill attached records showing that telephone and text message communications between Blue and Watkins spiked in the weeks before the indictments.[32] Blue hosted a political fundraiser for Watkins during that same period.[33] Hill produced no evidence that Blue and Watkins engaged in any substantive discussion of his case. A federal judge in the attorney's fee lawsuit reviewed the text messages between Blue and Watkins *in camera*—finding that none of them related to the Hill indictments.[34] Blue testified that she had two telephone conversations with Watkins about the indictments, each lasting less than a minute and neither involving substantive discussion (this also was the subject of a deposition excerpt attached to Hill's motion).[35]

### 3. A federal court deems Hill's allegations "supposition and speculation."

A federal magistrate judge denied Hill's request for post-judgment relief, concluding that his accusations "amount[ed] to nothing more than

---

[32] CR-180-I at 40-43, 212-408; CR-182-I at 36-40, 208-404; CR-183-I at 36-40, 208-404; CR-191-I at 35-38, 207-403.

[33] CR-180-II at 1052; CR-182-II at 941; CR-183-II at 940.

[34] *Blue v. Hill*, No. 3:10-CV-2269-L, 2014 WL 2217334, at *2 (N.D. Tex. May 29, 2014); *see also* CR-180-II at 1051; CR-182-II at 940; CR-183-II at 939.

[35] CR-180-I at 198-201; CR-181-I at 197-200; CR-182-I at 196-99; CR-183-1 at 194-96; CR-191-I at 193-96.

supposition and speculation."[36] In considering Hill's allegations about campaign contributions, the magistrate judge noted that:

> Blue and D.A. Watkins have had a personal, professional, and financial relationship since at least 2007, well before [the lawyers were] involved in the Hills' case . . . [and] Blue's longstanding relationship with D.A. Watkins actually undermines their suggestion that she behaved unusually by communicating with Watkins around the time of the indictments and holding a fundraiser for him. Given Blue's and D.A. Watkins's long relationship and her previous donations to his campaigns, neither of these undertakings appears unusual.[37]

In addressing Hill's claims about the spike in text messages, the magistrate judge noted that:

> Judge [Reid] O'Connor reviewed Blue's text messages to and from D.A. Watkins during the timeframe in question. That discovery yielded no evidence that Blue and D.A. Watkins ever discussed the Hills' indictments outside of the two brief instances when D.A. Watkins called Blue prior to the return of the indictments—instances about which Blue previously had testified and of which the Hills have long since been aware."[38]

In short, according to the magistrate judge:

> The Hills simply do not demonstrate by clear and convincing evidence that [the lawyers were] involved in the Hills' indictment.[39]

---

[36] CR-180-II at 1050; CR-182-I at 939; CR-183-I at 938.
[37] CR-180-II at 1051; CR-182-II at 940; CR-183-II at 939.
[38] CR-180-II at 1051; CR-182-II at 940; CR-183-II at 939.
[39] CR-180-II at 1052; CR-182-II at 941; CR-183-II at 940.

In May 2014, the federal district court judge echoed these findings, stating that the Hills relied on "supposition and speculation in place of evidentiary support . . . ." *Blue v. Hill*, No. 3:10-CV-2269-L, 2014 WL 2217334, at *4 (N.D. Tex. May 29, 2014). According to the federal court:

> There is not sufficient evidence to prove, or reasonably infer, that the interactions or relationship between Blue and Watkins resulted in the criminal charges against the Hills, that the indictment of the Hills was meant to reward Blue, or place the Hills at a disadvantage in the attorneys' fee dispute. The Hills speculate—but in no way establish—that the phone calls, meetings, and campaign donations from Blue to Watkins were related to the criminal charges against them, as opposed to legitimate purposes.
>
> . . .
>
> The Hills do not submit evidence, direct or circumstantial, to establish that Blue . . . influenced the District Attorney's Office to indict them wrongfully, or that such alleged conduct was intended to give [Blue] an unfair advantage in the attorneys' fee dispute.

*Id.*

4. **Relying on the same allegations rejected by the federal court, the trial court conducts an evidentiary hearing and dismisses the indictments.**

The State filed a response to Hill's motion in the criminal case and tendered supporting affidavits from Donna Strittmatter and Stephanie Martin, two of the assistant district attorneys involved in prosecuting Hill.

11

Both prosecutors testified that the DA's Office had no policy requiring that the target of a criminal investigation be permitted to address the grand jury.[40] They also denied knowing about Hill's dispute with Blue.[41] Finally, Martin testified that the prosecution of Hill was not unusual:

> The Specialized Division regularly prosecutes crimes similar to those committed by Mr. Hill . . . Prior to Mr. Hill's indictment, I personally and successfully prosecuted four other mortgage fraud cases where no money was funded and, thus, no actual loss was suffered.[42]

The trial court scheduled a hearing on Hill's motion to dismiss. In anticipation of that hearing, Hill served subpoenas on Watkins and other members of his staff concerning the Hill prosecution.[43] Watkins filed motions to quash the subpoenas.[44]

On February 14, 2013, the trial court conducted a hearing on Hill's motion. No one introduced any evidence at the hearing. Hill's lawyers argued that he was entitled to an evidentiary hearing and, ultimately, dismissal based on his federal constitutional claims. But they also admitted

---

[40] CR-180-I at 774, 778; CR-182-I at 682, 686; CR-183-I at 681, 685.
[41] CR-180-I at 774, 778; CR-182-I at 682, 686; CR-183-I at 681, 685.
[42] CR-180-I at 778; CR-182-I at 686; CR-183-I at 685.
[43] CR-180-I at 523-67.
[44] CR-180-I at 506-47.

that they required the evidentiary hearing to *develop* evidence of these federal claims:

> THE COURT: So my question is: What kind of evidence do you expect to present to convince the Court that he doesn't present – that he doesn't prosecute these types of cases . . . ?
>
> MR. HUESTON: Well let me explain one – Your Honor, this is – it kinda proceeds in buckets. Bucket number one is, there was a corrupt deal that caused this case to be indicted. That's gonna *come out in the examinations* of Mr. Watkins and Ms. Blue . . . Number two, *we're gonna show that*, even independent of a corrupt deal – let's put that aside. And we're *going to elicit that* – that this case has all the hallmarks of a case that would normally be declined by this office. That is selective prosecution.[45]
>
> . . .
>
> THE COURT: But what evidence was presented to convince the Court that this type of case would not normally have been indicted?
>
> MS. PLESSMAN: This –
>
> THE COURT: And are you prepared to present such evidence today?
>
> MS. PLESSMAN: I – I think we are prepared to *present such evidence today.*[46]
>
> . . .

---

[45] 2 R.R. at 15-16 (emphasis added).
[46] 2 R.R. at 13-14 (emphasis added).

13

> MR. HUESTON: . . . These circumstances, in part and through the testimony, I think, **we will elicit,** will show that he has been vindictively and selectively prosecuted.[47]

The State argued that Hill's failure to provide any evidence establishing a constitutional violation precluded an evidentiary hearing.[48]

The trial court overruled the State's objections to the subpoenas,[49] scheduled an evidentiary hearing,[50] and ordered Watkins to appear and testify.[51] But even the trial court acknowledged the lack of evidence at that time to support Hill's allegations, telling his lawyers "your exhibits on your motions are not evidence"[52] and saying:

> THE COURT: . . . So is that the type of evidence that you're gonna be presenting to the Court. I mean**, I don't understand how you're going to get there** . . . .[53]
>
> . . .
>
> THE COURT: Yes. I am granting the Defendant the right to have **a hearing to try to prove** to the Court that this case was handled differently from any other case that would come before the  . . . DA.[54]

---

[47] 2 R.R. at 16 (emphasis added).
[48] 2 R.R.at 31.
[49] 2 R.R. at 53.
[50] 2 R.R. at 30.
[51] 2 R.R. at 54.
[52] 3 R.R. at 23-24.
[53] 2 R.R. at 17 (emphasis added).
[54] 2 R.R. at 30-31 (emphasis added).

On March 4, 2013, the trial court convened the evidentiary hearing but then rescheduled it for the following week. By this time, Watkins had sought mandamus relief from the Dallas Court of Appeals and this Court.[55]

On March 7, 2013—with the mandamus petitions having been denied—the trial court conducted its evidentiary hearing. Hill's lawyers called Watkins as a witness and asked him the following two questions:

> Mr. Watkins, before the indictments of the Hills were handed down, you had at least one or more phone calls with Lisa Blue concerning the Hills, correct?
>
> You said to Ms. Blue, words to the effect of, there could be an indictments of Mr. Hill, or both the Hills. Are you still interested in the indictments? Correct, sir?

Watkins refused to answer, asserting the attorney-client privilege and work product exemption. The trial court held him in contempt of court.[56]

The trial court then conducted a lengthy evidentiary hearing during which Moore testified that Watkins attended a "pitch session" on the Hill indictments.[57] This, she testified, was not unusual; Watkins often attends

---

[55] CR-180-III at 1163-1213; CR-182-III at 1042-92; CR-183-III at 1041-91; CR-191-II at 599-649.
[56] 4 R.R. at 17.
[57] 4 R.R. at 38.

pitch sessions.[58] Moore testified that she had no knowledge of Watkins ever discussing the Hill case with Blue.[59] And she denied the existence of any grand jury notice policy—a notion she deemed "laughable" due to the thousands of people indicted each year in Dallas County.[60] Finally, Moore testified that she never spoke to Watkins about the Hill case other than during the pitch session.[61]

Strittmatter and Martin each testified that Watkins never said anything to them about Blue.[62] They testified that the only involvement by Watkins in the case was his attendance at the pitch session.[63] Martin remembered Watkins making comments and suggestions during the pitch session but that was the only time he discussed the case with her.[64]

In an effort to bolster his equal protection claim, Hill's lawyers questioned Strittmatter and Martin about the prosecution of cases involving fraud on a loan application where the funding party makes no complaint and the money is repaid. Strittmatter termed this "unexceptional," explaining that the office frequently pursues cases where the defendant attempts to

---

[58] 4 R.R. at 39.
[59] 4 R.R. at 43-44.
[60] 4 R.R. at 51, 53.
[61] 4 R.R. at 60.
[62] 4 R.R. at 81, 107, 163.
[63] 4 R.R. at 85, 162.
[64] 4 R.R. at 163-64.

procure funds by fraud but never gets the money.[65] Martin testified about four other instances where the DA's Office prosecuted what she considered similar crimes.[66]

Based on these answers about similar cases, Hill's lawyers asked Strittmatter and Martin about cases involving *exactly* the same facts. Both of them stated that they were unaware of any case involving precisely the same facts.[67] No one identified any person similarly situated to Hill and not prosecuted by the DA's Office.[68]

Hill contends that Martin admitted during her testimony that the Hill prosecution was "unprecedented."[69] Actually, Martin's testimony about the Hill prosecution being unprecedented related only to *her caseload*. Hill's lawyer asked whether *she* had presented a case like Hill's to the grand jury. Martin said the prosecution was "unprecedented" for her as a junior prosecutor—not for the DA's Office.[70]

According to the trial court, testimony during the hearing made the

---

[65] 4 R.R. at 115, 126.
[66] 4 R.R. at 180, State's Exh. 5.
[67] 4 R.R. at 127, 155.
[68] 4 R.R. at 127, 155.
[69] Petitioner's Brief at 15.
[70] 4 R.R. at 155.

case "smell really bad."[71] The trial court concluded that the refusal by Watkins to testify violated Mr. Hill's "right" to an evidentiary hearing:

> If he has a right to have a hearing and the State is denying him that right by failing to testify, it seems to me – I'm thinking that --- because, right now, he's being denied his rights to have this hearing – that he's entitled to a dismissal.[72]

The trial court said that "because of the failure of Mr. Watkins to testify in this hearing, the Defendant has been denied his right to have a meaningful hearing on his Motion to Dismiss. And on that basis, I'm dismissing the cases."[73] The trial court's findings of fact and conclusions of law likewise state that the refusal by Watkins to testify denied Hill of "his right to have a meaningful hearing" on his motion.[74]

The trial court orally pronounced dismissal during the hearing on March 7, 2013,[75] and later signed written orders dismissing the cases with prejudice.[76] Nearly five months later, on August 2, 2013, the trial court filed findings of fact and conclusions of law.[77]

On August 23, 2013, a specially appointed visiting judge conducted a

---

[71] 4 R.R. at 192.

[72] 4 R.R. at 192.

[73] 4 R.R. at 219.

[74] 1st Supp. CR 180 at 115-16.

[75] 4 R.R. at 219.

[76] CR-180-III at 1100; CR-182-III at 978; CR-183-III at 977; CR-191-II at 577.

[77] CR-180-S at 78-116; CR-182-S at 78-116; CR-183-S at 77-115; CR-191-S at 63-101.

*de novo* review of the trial court's contempt finding against Watkins. The visiting judge acquitted Watkins of contempt, holding that: (1) the evidentiary hearing was improper due to Hill's failure to provide evidence establishing his entitlement to it, and (2) Watkins properly refused to testify based on the work product exemption.[78]

**5.      The Dallas Court of Appeals reinstates the indictments.**

The State appealed, asserting four issues: (1) Hill's reliance on unauthenticated attachments rather than evidence precluded his entitlement to an evidentiary hearing, (2) Hill's allegations, even if credited, failed to establish any prima facie federal constitutional violation, (3) Watkins properly asserted the work product exemption in refusing to testify, and (4) even if everything Hill alleged was true, he was entitled only to a dismissal without prejudice.

The court of appeals confirmed that Hill "attached forty-four exhibits in support of his motion, most of which were unauthenticated or not otherwise identified by affidavit testimony." *Hill*, 2014 WL 7497992, at *3. Though noting that it was "troubled by the unsworn allegations in and authenticity of the documents attached to Hills motion," the court of

---

[78] 2nd Supp. CR-180 at 4-5.

appeals held that it did not need to address this issue because "Hill did not meet the standard required to warrant an evidentiary hearing even when we consider the documents attached to Hill's motion." *Id*. at *6.

The court of appeals held that even crediting Hill's documents, he failed to make the showing required to entitle him to an evidentiary hearing, and the trial court erred in affording him that hearing to try and produce such evidence. *Id*. at *10-11 (citations omitted).

## Summary of the Argument

This appeal does not really implicate Mr. Hill's stated core issue concerning the standard necessary to probe prosecutorial motive. That is because Hill's motion failed to meet ***any*** standard more demanding than supposition and speculation. Indeed, Hill's brief really fails even to explain in any detail how he met ***any*** standard governing his claims for selective and vindictive prosecution. Most of the brief consists of purported facts and abstract discussion of prosecutorial misconduct—with little effort to link the two.

Hill failed to allege the non-prosecution of any similarly situated defendant—something the United States Supreme Court has deemed an "absolute requirement" for a selective prosecution claim. Hill failed to

provide any evidence that Watkins prosecuted him to assist Blue; indeed, Hill failed to provide any evidence that Watkins and Blue ever engaged in a single substantive conversation about him. Hill simply speculates that they did. But this speculation cannot overcome the presumption of good faith that attaches to every prosecution. As a result, even crediting Hill's "evidence" and affording him a "colorable basis" standard, he was not entitled to an evidentiary hearing.

Independently, the U.S. Supreme Court has made clear that claims like selective and vindictive prosecution must be supported by actual evidence. Hill's "evidence" consists almost entirely of unsworn allegations and unauthenticated documents attached to his motions. Thus, this appeal really does not require clarification of the meaning of "some evidence" because Hill failed to provide any *evidence* to support his allegations. This failure precluded his entitlement to an evidentiary hearing.

**Argument**

Hill asserted federal constitutional claims. Texas courts must "follow the decisions and reasoning of the United States Supreme Court on federal constitutional issues." *Guzman v. State*, 85 S.W.3d 242, 249 n.24 (Tex. Crim. App. 2002) (citing *State v. Guzman*, 959 S.W.2d 631, 633 (Tex. Crim.

App. 1998). Moreover, Texas courts may give persuasive effect to federal circuit court decisions on such claims. *Id.* (citations omitted). The court of appeals followed established federal law—particularly the U.S. Supreme Court's decision in *United States v. Armstrong*, 517 U.S. 456, 464 (1996)—in reaching its decision.

Under federal law, a trial court's decision to conduct an evidentiary hearing must be supportable by the legal principles and standards governing entitlement to such hearings. *See, e.g., United States v. Webster*, 162 F.3d 308, 334 (5th Cir. 1998) (defendant "not automatically entitled to evidentiary hearing to make the required showing").

A prosecutor possesses broad authority in determining whom to prosecute. *United States v. Goodwin*, 457 U.S. 368, 380 n.11 (1982). So long as the prosecutor has probable cause to believe the accused committed an offense, the decision whether to bring a case before the grand jury generally rests entirely in the prosecutor's discretion. *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978).

Of course, "a prosecutor's discretion 'is subject to constitutional constraints.'" *Armstrong*, 517 U.S. at 464 (citation omitted). But assertion of a constitutional claim based on a prosecutor's charging function asks a court

"to exercise judicial power over a 'special province' of the Executive." *Id.* (citation omitted).

As a result, courts addressing challenges to the exercise of prosecutorial discretion presume that prosecutors act in good faith to discharge their duty to bring criminals to justice. *Armstrong*, 517 U.S. at 464 (citation omitted). "Courts must presume that a criminal prosecution is undertaken in good faith and in nondiscriminatory fashion to fulfill the State's duty to bring violators to justice." *Neal v. State*, 150 S.W.3d 169, 173 (Tex. Crim. App. 2004). "[I]n the absence of clear evidence to the contrary, courts presume that [prosecutors] have properly discharged their official duties." *Armstrong*, 517 U.S. at 464 (quoting *United States v. Chem. Found. Inc.*, 272 U.S. 1, 14-15 (1926)).

This presumption carries over to a defendant's request for an evidentiary hearing or discovery. *See Webster*, 162 F.3d at 334; *see also Armstrong*, 517 U.S. at 464 (noting that because prosecutors are afforded a "background presumption," the necessary showing "to obtain discovery should itself be a significant barrier to the litigation of insubstantial claims").

A defendant alleging prosecutorial misconduct must make out a prima facie case of his claims before he is entitled to an evidentiary hearing or

discovery. *See In re United States*, 397 F.3d 274, 284 (5th Cir. 2005); *Webster*, 162 F.3d at 334. Thus, a defendant must "present facts 'sufficient to create a reasonable doubt about the constitutionality of [his] prosecution' . . . ." *Webster*, 162 F.3d at 334 (citation omitted) These facts must be more than allegations. *See United States v. Jennings*, 724 F.2d 436, 445–46 (5th Cir. 1984). To obtain discovery on a claim for selective or vindictive prosecution, the defendant must produce "some evidence tending to show the existence of the essential elements" of the claim. *Armstrong*, 517 U.S. at 468; *see also In re United States*, 397 F.3d at 284 (prima facie case "requires the criminal defendant to bring forward some evidence").

## I. The trial court erred in ordering an evidentiary hearing because Hill failed to establish any constitutional violation.

Hill sought an evidentiary hearing to ascertain the DA's motives for prosecution. The trial court dismissed the indictments because the refusal by Watkins to testify denied Hill of his "right" to do so. Thus, if Hill failed to meet the standard required to merit an evidentiary hearing—if he never was entitled to that hearing in the first place—then the trial court abused its discretion by dismissing the indictments based on the lack of a "meaningful" hearing.

On appeal to this Court, Hill apparently no longer seeks to assert his

24

due process claim concerning lack of an impartial prosecutor. His petition for discretionary review and merits brief mention this claim only in detailing the procedural history of the case. As a result, the State will address only the claims for selective and vindictive prosecution.

### A. Hill failed to establish selective prosecution.

#### 1. There is no presumption of selective prosecution.

Hill contends that he was entitled to a presumption of selective prosecution.[79] But this presumption applies only to claims of vindictive prosecution—not selective prosecution. Contrary to Hill's claim, this Court never discussed any presumption related to selective prosecution claims in *Neal* or any other case. *See Neal*, 150 S.W.3d at 173.

#### 2. Hill never met his "absolute requirement" to show that the DA's Office failed to prosecute a similarly situated defendant.

To establish selective prosecution, Hill had to show that (1) he was singled out for prosecution while a similarly situated violator was not prosecuted; and (2) the decision to prosecute was based on an arbitrary classification such as race, religion, or the exercise of constitutional rights. *Gawlik v. State*, 608 S.W.2d 671, 673 (Tex. Crim. App. 1980) (citation

---

[79] Petitioner's Brief at 50.

omitted); *see also Jarrett v. United States*, 822 F.2d 1438, 1443 (7th Cir. 1987).

The United States Supreme Court has held explicitly that the burden to identify a similarly situated but unprosecuted person is an ***"absolute requirement"*** to support even a request for discovery based on selective prosecution. *Armstrong*, 517 U.S. at 467. The Court gave teeth to this standard in *Armstrong* by holding statistical analysis suggestive of racial distinctions in prosecution insufficient to warrant relief. *Id.* at 470. Despite this compelling evidence of racially motivated prosecutions, the Court held 8-1 that the defendants needed more and better evidence: proof of similarly situated persons that the government declined to prosecute. *Id.*

Hill never identified any similarly situated individual. Hill's failure to meet this "absolute requirement" meant he was not entitled to an evidentiary hearing on his claim of selective prosecution. *See id.* Hill failed to present any evidence that he was singled out for prosecution under circumstances that do not normally result in prosecution, or that he was treated differently than any other defendant in his situation.

In support of his argument concerning establishment of a "colorable basis" for his selective prosecution claim, Hill cites a series of federal circuit

cases. He contends these cases all stand for the proposition that a criminal defendant is entitled to an evidentiary hearing based on a "colorable" claim of selective prosecution. *See United States v. Penagaricano-Soler*, 911 F.2d 833 (1st Cir. 1990); *United States v. Fares*, 978 F.2d 52 (2d Cir. 1992); *United States v. Torquato*, 602 F.2d 564 (3d Cir. 1979), *cert. denied*, 444 U.S. 941 (1979); *United States v. Greenwood*, 796 F.2d 49 (4th Cir. 1986); *United States v. Peete*, 919 F.2d 1168 (6th Cir. 1990); *United States v. Goulding*, 26 F.3d 656 (7th Cir. 1994), *cert. denied*, 513 U.S. 1061 (1994); *United States v. P.H.E., Inc.*, 965 F.2d 848 (10th Cir. 1992); *Jones v. White*, 992 F.2d 1548 (11th Cir. 1993), *cert. denied*, 481 U.S. 1055 (1993); *Attorney Gen. of United States v. Irish People, Inc.*, 684 F.2d 928 (D.C. Cir. 1982), *cert. denied*, 459 U.S. 1172 (1983).

First, of course, Hill failed to present evidence establishing a "colorable basis" for his selective prosecution claim because he never identified any similarly situated defendant whom the government declined to prosecute. Thus, under ***any*** standard, Hill failed to meet this "absolute requirement" for his selective prosecution claim.

Second, every one of these cases pre-dates the Supreme Court's decision in *Armstrong* explicitly imposing identification of a similarly situated but unprosecuted person as an "absolute requirement" to obtain discovery

27

of a selective prosecution claim. Indeed, Hill even cites the decision by the court of appeals in *Armstrong* itself—but fails to include the complete citation reflecting the Supreme Court's reversal of that decision based on the defendant's failure—just like Hill's failure—to meet this "absolute requirement." *See* Petitioner's Brief at 75 (citing *United States v. Armstrong*, 48 F.3d 1508 (9th Cir. 1995) (en banc), *reversed*, 517 U.S. 456 (1996)).

The evidentiary requirement applies to any request to explore prosecutorial motive—even discovery. In *Armstrong*, the Court held that "the showing necessary to obtain discovery should itself be a significant barrier to the litigation of insubstantial claims." *Id*. at 463-64. Thus, "*Armstrong* effectively required proof of an equal protection violation before a court could allow the defendant to engage in discovery of the prosecution's motive." Peter J. Henning, *Prosecutorial Misconduct and Constitutional Remedies*, 77 WASH. U. L.Q. 713, 750 (1999). "Without explicitly saying so, the Court made protection of prosecutor motives paramount to the defendant's ability to assert a selective prosecution claim." *Id*. at 751.

*Armstrong* imposes an absolute requirement for evidence of similarly situated defendants who were not prosecuted. Hill's lawyers admitted that they lacked such evidence and hoped to elicit it during the evidentiary

hearing. The trial court nevertheless ordered the hearing.

The Fifth Circuit took a district court to task for compelling government production of information concerning its charging decisions where counsel admitted the information was necessary to make out a prima facie case of selective prosecution, deeming this a "misapplication of *Armstrong* . . . ." *In re United States*, 397 F.3d 274, 284-85 (5th Cir. 2005). According to the Fifth Circuit:

> Before a criminal defendant is entitled to ***any discovery*** on a claim of selective prosecution, he must make out a prima facie case. The prima facie case of selective prosecution requires the criminal defendant to bring forward some ***evidence*** that similarly situated individuals of a different race could have been prosecuted, but were not. More specifically, a defendant must first present ***evidence*** of both discriminatory effect and discriminatory intent.

*Id.* at 284 (emphasis added) (internal citations omitted). This case is the same. Hill admitted through counsel his need for the evidentiary hearing to obtain facts supporting his claim. Just as in *In re United States*, the trial court misapplied *Armstrong* in ordering the hearing.

*Armstrong* was a selective prosecution case. But its evidentiary requirement applies to all of Hill's constitutional claims. The same separation-of-powers concerns underlying *Armstrong* apply to judicial

29

involvement on any due process or equal protection theory. More important, pragmatic concerns mandate an evidentiary standard. If Texas criminal defendants could force district attorneys to the stand in advance of trial based solely on unsworn allegations and unauthenticated documents—no matter how compelling the accusations—our criminal justice system would grind swiftly to a halt. As a result, the Supreme Court astutely requires *evidence* of a prima facie case of some violation to gain an evidentiary hearing.

Hill's inability to provide evidence of the DA's failure to prosecute a similarly situated defendant—an absolute requirement—doomed his selective prosecution claim. The trial court abused its discretion in granting an evidentiary hearing based on this claim.

### B. Hill failed to establish vindictive prosecution.

#### 1. Hill relies on a presumption that applies only to trial proceedings.

Vindictive prosecution cases may be established based either on (1) presentation of circumstances sufficient to raise a rebuttable presumption of prosecutorial vindictiveness, or (2) proof of actual vindictiveness, which means direct evidence that the prosecutor's charging decision was an unjustifiable penalty resulting solely from the defendant's exercise of a

protected legal right. *Neal*, 150 S.W.3d at 173 (citations omitted). But the presumption of vindictiveness does not apply to pretrial proceedings.

In *Goodwin*, the Supreme Court held that where misconduct occurred before trial, "the timing of the prosecutor's action in this case suggests that a presumption of vindictiveness is not warranted." *Goodwin*, 457 U.S. at 381. The Court noted "good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting." *Id.*

This Court has interpreted *Goodwin* as meaning that "the presumption of vindictiveness prong rarely—if ever—applie[s] outside the context of prior conviction, successful appeal, and post-appeal enhanced charging decision . . . ." *Neal*, 150 S.W.3d at 173 n.12 (citing *Goodwin*, 457 U.S. at 381). Other courts similarly hold that *Goodwin* precludes application of the presumption to pretrial proceedings. *See* WAYNE R. LAFAVE, JEROLD H. ISREAL, NANCY J. KING & ORIN S. KERR, CRIMINAL PROCEDURE § 13.7(c) n.43 (3d ed. 2010) (citing First, Sixth, Seventh, Eighth, and Ninth Circuit cases for this proposition); *see also, e.g., United States v. Johnson*, 91 F.3d 695, 698 (5th Cir. 1996); *United States v. Gamez-Orduno*, 235 F.3d 453, 462 (9th Cir. 2000). This, of course, does not preclude a showing of actual vindictiveness; it just means that proof is required. *Goodwin*, 457 U.S. at 384.

## 2. Hill provided no evidence suggesting that he was vindictively prosecuted.

Because the presumption of vindictiveness does not apply, Hill bore the burden to establish actual vindictiveness by introducing direct evidence that the charging decision was a "direct and unjustifiable penalty" resulting *solely* from the exercise of a protected legal right. *Neal*, 150 S.W.3d at 173 (citation omitted). In short, he had to prove that he would not have been prosecuted except for the animus. *United States v. Koh*, 199 F.3d 632, 640 (2d Cir. 1999) (citation omitted). The State could "stand mute unless and until [Mr. Hill carried] his burden of proof . . . ." *Neal*, 150 S.W.3d at 175 (citation omitted).

Hill provided no evidence related to alleged improprieties in the indictments, his claim about the "unprecedented" nature of the charges, or his belief that the indictments were not thoroughly investigated. He claimed denial of a right to address the grand jury—but based that claim solely on a 2007 newspaper article that described the DA's office having such a policy. Hill presented no evidence that such a policy actually existed at the time of his indictment; indeed, Martin denied the existence of such a policy and

Moore deemed it "laughable."[80]

Hill alleged that ADA Deborah Smith communicated her "concerns" about the charges. Again, though, he provided no evidence to support this claim. And Martin's affidavit to the trial court detailed her lengthy investigation of the Hill case, which spanned several months and included receiving documents from various sources and talking to the bank's legal counsel.

Hill alleged that Watkins prosecuted him in retaliation for engaging in civil litigation against both his father and Blue. But he offered no evidence that the charging decision was a penalty for his actions in the civil litigation. In fact, his attorneys admitted that they needed the evidentiary hearing to "elicit" evidence that Hill was "vindictively and selectively prosecuted."[81]

Independently, Hill offered no evidence that he would not have been prosecuted except for the purported animus. This deficiency arises from Hill's failure to establish that the DA's Office normally declines to prosecute these types of cases. In short, Hill thought he had only to raise a presumption of vindictiveness when in actuality he had to provide direct evidence of it.

---

[80] 4 R.R. at 51, 53.
[81] 2 R.R. at 16 (emphasis added).

Hill details telephone calls and social meetings between Blue and Watkins. But no evidence suggests that Blue and Watkins discussed Hill on any of these occasions. As he did in the trial court, Hill relies on innuendo and speculation. For example, he notes Blue's testimony concerning a telephone call from Watkins at 10:54 a.m. on January 21, 2011, in which informed him that she no longer had any interest in the Hill prosecution. Hill then references a subsequent telephone conversation—but cites no evidence that this conversation had ***anything*** to do with him.[82] He simply asks this Court to ***presume*** that it did.

The only evidence of communications between Blue and Watkins establishes that they did ***not*** discuss Hill. Blue testified that the Hill indictments came up only twice, never resulting in any substantive conversation.[83] A federal judge reviewed the text messages between Blue and Watkins without finding any mention of Hill. In sum, Hill simply provides no evidence sufficient to establish even a colorable basis for his claim of vindictive prosecution.

---

[82] Brief of Appellee at 12.

[83] CR-180-I at 198-201; CR-181-I at 197-200; CR-182-I at 196-99; CR-183-1 at 194-96; CR-191-I at 193-96.

### C. Hill never really even explains his claims.

At two points in his brief, Hill delineates the facts he claims to have established by the "evidence" attached to his motion.[84] But he provides insufficient—indeed, meaningless—record citations for these purported facts. Hill provides a bullet-point listing of 24 purported facts. But rather than support each fact with a record cite, he provides only one record cite for this three-page list—and that cite is to the entire 416 pages of attachments to his motion.

Hill leaves the State and this Court with no means of verifying a single one of his factual allegations other than by perusing 416 pages of documents and guessing about where Hill purports to find support for each of his allegations.

Hills' failure to support his factual allegations with proper record citations is particularly troubling because at least some of the allegations appear to lack record support. For example, Hill's laundry list repeats the allegations made elsewhere in his brief that Smith "apologized" for the prosecutions.[85] But the record citations provided by Hill do not support this purported fact. The reporter's record citation consists only of closing

---

[84] Petitioner's Brief at 27-30, 64-67.
[85] Petitioner's Brief at 36.

argument by Hill's counsel—not evidence.[86] The other citation is to the trial court's findings of fact, not any evidence to support them.[87]

Hill refers to Martin's decision not to interview the loan officer or mortgage broker from the loan. But he never explains the significance of this fact. Martin believed that written documents and Hill's deposition testimony established the fraud. The bank's lawyer and the trustee agreed that Hill committed fraud.[88] Hill never explains why these additional steps were necessary.

In his statement of facts, Hill also cites what he contends was damning testimony by Martin.[89] But he conflates testimony about two different strategies for prosecution. Martin testified that she always intended to present the Hill case to the grand jury,[90] considering it "one of the easier cases [she] had" because the fraud was documented in writing and admitted under oath.[91]

In her handwritten notes, Martin expressed concerns related to pursuing the case with *the trust* as the complainant. The trustee was pushing

---

[86] 4 R.R. at 216-218.
[87] 1st Supp. CR-180 at 96.
[88] 4 R.R. at 138, 156.
[89] Petitioner's Brief at 37.
[90] 4 R.R. at 148-49.
[91] 4 R.R. at 150-51.

for indictments. Martin informed him she did not believe the case could be successful with the trust as the complainant—it needed to be the bank. This was the context in which Martin expressed her concerns: "As far as the trust being the victim is what I was telling him, not that mortgage fraud hadn't happened."[92]

Martin testified that the bank told her it would not have filed any complaint to start the prosecution because Hill eventually repaid the loan.[93] But the bank—after learning of the fraud—agreed to cooperate in the prosecution.[94] And the bank's counsel agreed that Hill had committed fraud.[95]

Hill conflates these separate issues to attack Martin's credibility. He contends that Martin's notes expressing doubt about pursuing the case with the trust as the complainant somehow undermine her testimony about the case with the bank as the complainant. But that doubt existed solely as to the efficacy of pursuing the case with the trust as the complainant.

Hill also suggests that Martin changed her handwritten notes to rebut his motion. But Martin testified she didn't even know when Hill filed his

---

[92] 4 R.R. at 187; 183-86.
[93] 4 R.R. at 184.
[94] 4 R.R. at 184-85.
[95] 4 R.R. at 156.

motion.[96] She augmented her notes to reflect later conversations with Pickett.[97]

In addition to his failure to support many of his factual allegations with proper record citations, Hill also fails to explain how these purported facts support his constitutional claims for selective and vindictive prosecution. Hill's brief contains lengthy arguments about the standards for proving such claims but almost no substantive discussion of how he met those standards. Hill does not, for example, ever explain how the facts he purports to have established satisfied the legal elements of a claim for selective prosecution. That may be because, as the court of appeals properly concluded, Hill did not satisfy those elements.

### D.    Hill cannot rely on the trial court's findings of fact.

The trial court filed its findings of fact after the Dallas Court of Appeals acquired jurisdiction over the case. As a result, the trial court's findings are a nullity and this Court should consider the case "as though findings were never filed." *Sonnier v. Sonnier*, 331 S.W.3d 211, 215-16 (Tex. App.—Beaumont 2011, no pet.) (citing *Saudi v. Brieven*, 176 S.W.3d 108, 114 (Tex. App.—Houston [1st Dist.] 2004, pet. denied)).

---

[96] 4 R.R. at 189
[97] 4 R.R. at 189.

**E. Hill cannot rely an adverse inference against the State.**

The trial court drew adverse inferences against the State based on the assertion by Watkins of privilege, and Blue's assertion of her Fifth Amendment rights.[98] The trial court justified this adverse inference by citing cases holding that such an inference may be drawn in a civil case.[99] But this is a criminal case. The Texas Rules of Evidence plainly provide that "the claim of a privilege . . . is not a proper subject of comment by judge or counsel, and no inference may be drawn therefrom." TEX. R. EVID. 513(a). The only exceptions are for civil cases and assertions of spousal privilege. TEX. R. EVID. 513(c), 504(b)(2). Thus, Hill cannot rely on any adverse inference in this criminal case.

**F. Hill cannot rely on public policy concerns.**

Hill contends that public policy concerns support affording criminal defendants like him an evidentiary hearing under these circumstances. But in *Armstrong*, the Supreme Court took such concerns into account before enunciating the rigorous standard for discovery of prosecutorial motive.

While Hill is no doubt correct about the concerns of criminal defendants related to probing prosecutorial misconduct, these are hardly the

---

[98] CR-180-S at 98-99; CR-182-S at 98-99; CR-183-S at 97-98; CR-191-S at 83-84.

[99] CR-180-S at 104; CR-182-S at 104; CR-183-S at 103; CR-191-S at 89 (citing *Webb v. Maldonado*, 331 S.W.3d 879 (Tex. App.—Dallas 2011, pet. denied).

only concerns in play. Claims of prosecutorial misconduct also implicate weighty issues involving separation of powers in our constitutional scheme. *Armstrong*, 517 U.S. at 464. Such claims also may unduly delay judicial proceedings, have a chilling effect on law enforcement, and undermine public safety "by revealing the Government's enforcement policy." *See Wayte v. United States*, 470 U.S. 598, 607 (1985).

The decision in *Armstrong* reflects the Supreme Court's effort to balance these competing concerns. While commentators have questioned whether the Court struck the proper balance, they have expressed no doubt that this balancing took place: *See, e.g.*, Henning, 77 WASH. U. L.Q. at 751 ("Without explicitly saying so, the Court made protection of prosecutor motives paramount to the defendant's ability to assert a selective prosecution claim."). In any event, policy concerns do not trump federal constitutional law as established by the Supreme Court.

### G. Conclusion: The evidentiary hearing never should have occurred.

Hill cites a series of cases for the proposition that Texas courts have afforded evidentiary hearings to criminal defendants in similar situations. But these cases say nothing about ***entitlement*** to an evidentiary hearing. They establish only that courts conducted hearings in other cases. They

provide no indication of the evidentiary showing made to justify the hearings, whether anyone opposed the hearings, or whether witnesses appeared voluntarily.[100] These cases have nothing to do with the issue in this appeal.

Hill was not entitled to an evidentiary hearing until he established a prima face case of a constitutional violation. The State has no burden to rebut constitutional claims until the defendant establishes a prima facie case supporting them. *See Quintana*, 346 S.W.3d at 686-87 (citation omitted); *see also United States v. Falk*, 479 F.2d 616, 623-24 (7th Cir. 1973).

The Eighth Circuit recently held that a defendant contending "the district court should have granted an evidentiary hearing in support of her motion to dismiss [based on selective prosecution]" . . . must "present some *evidence*" supporting the elements of that claim to get the hearing. *United States v. Peterson*, 652 F.3d 979, 982 (8th Cir. 2011) (emphasis added) (citing *United States v. Perry*, 152 F.3d 900, 903 (8th Cir. 1998) and *Armstrong*, 517 U.S. at 468-69). The court affirmed denial of an evidentiary hearing because

---

[100] See *State v. Terrazas*, 970 S.W.2d 157, 160 (Tex. App.—El Paso 1998), *aff'd*, 4 S.W.3d 720 (Tex. Crim. App. 1999); *State v. Frye*, 897 S.W.2d 324, 331 (Tex. Crim. App. 1995); *Landers v. State*, 256 S.W.3d 295, 300-01 (Tex. Crim. App. 2008); *State ex rel. Young v. Sixth Jud. Dist. Ct. of Appeals at Texarkana*, 236 S.W.3d 207, 209 (Tex. Crim. App. 2007); *Eleby v. State*, 172 S.W.3d 247, 249 (Tex. App.—Beaumont 2005, pet. ref'd); *Galvin v. State*, 988 S.W.2d 291, 296 (Tex. App.—Texarkana 1999 pet. ref'd).

the defendant had not shown "credible *evidence*" of discrimination. *Id.* (emphasis added).

The Seventh Circuit has applied this same requirement to a request for an evidentiary hearing based on a vindictive prosecution claim, holding the presumption of good faith necessitates an evidentiary standard to obtain any hearing based on prosecutorial misconduct. *United States v. Falcon*, 347 F.3d 1000, 1004-05 (7th Cir. 2003). Indeed, the Seventh Circuit interpreted the law before *Armstrong* as imposing a *more stringent* standard for an evidentiary hearing than for discovery. *See United States v. Kerley*, 787 F.2d 1147, 1150 (7th Cir. 1986).

Even before *Armstrong*, federal courts "applied the same standard for granting discovery orders and evidentiary hearings in this area . . . ." *Wayte*, 470 U.S. at 621 n.1 (1985) (Marshall, J., dissenting). They continue to apply the same test to demonstrate entitlement "to discovery or an evidentiary hearing in a selective prosecution case . . . ." *United States v. Blackley*, 986 F.Supp. 616, 618 (D.D.C. 1997) (citations omitted); *see also, e.g., United States v. Dean*, 119 F. Supp. 2d 81, 82 (D. Conn. 2000) (requiring evidence to justify evidentiary hearing on vindictive prosecution claim); *United States v. Awan*, 459 F.Supp.2d 167, 187 (E.D.N.Y. 2006) (same).

Hill's failure to make a prima facie showing under any of his asserted constitutional theories means the trial court erred in affording him an evidentiary hearing and then dismissing the indictments based on whether that evidentiary hearing was meaningful.

**II.     The trial court erred in granting Hill an evidentiary hearing because he presented no evidence to support his request.**

Absent evidence, anyone can allege anything. The phrase *some evidence* still includes the word *evidence*. Hill's motion seeking an evidentiary hearing contained no **evidence** other than the mostly irrelevant transcript excerpts. He did not support any of his central allegations—about campaign contributions, text messages, and frequent telephone calls—with evidence. Hill did not tender any affidavit testimony and made no effort to introduce any of his attachments into evidence—something that would have been difficult given obvious hearsay problems.

Hill claims he tendered evidence of a *prima facie* constitutional violation before the evidentiary hearing. But **everyone** involved in discussing Hill's entitlement to an evidentiary hearing agreed that was not so. The trial court explicitly ordered the evidentiary hearing to let Hill try and gather such

evidence.[101] The State argued Hill had not tendered evidence.[102] And even Hill's lawyers admitted they needed the hearing to elicit evidence of a violation.[103]

Only the transcript excerpts can even arguably be considered evidence. And they provide scant support for Hill's claims. Two of the excerpts contain the previously mentioned testimony by Blue concerning her previous representation of Watkins and the two 60-second conversations with him. Another consists of Malouf's deposition testimony that he overheard one of those 60-second conversations.[104]

The remaining two deposition transcripts consist of a single page of testimony from Alan Strubel that he sent the Malouf firm a congratulatory e-mail related to the Hill case, and an excerpt from the deposition of another witness that contains only the cover, appearance, and certification pages but no actual testimony.[105] The evidentiary hearing transcripts consist only of the Hills' invocation of their Fifth Amendment rights during the federal fee trial.[106]

---

[101] 3 R.R. at 24; 2 R.R. at 17, 30-31.
[102] 2 R.R. at 31.
[103] 2 R.R. at 13-16.
[104] CR-180-I at 438-43; CR-182-I at 434-39; CR-183-I at 434-39; CR-191-I at 433-38.
[105] CR-180-I at 449-52; CR-182-I at 445-48; CR-183-I at 445-48; CR-191-I at 444-47.
[106] CR-180-I at 461-78; CR-182-I at 457-74; CR-183-I at 457-74; CR-191-I at 456-73.

Taken together, the only possible "evidence" tendered by Hill established that: (1) Blue and Watkins had two 60-second conversations concerning the Hill indictments, neither of which involved any substantive discussion, (2) Alan Strubel congratulated the Malouf firm, and (3) the Hills invoked their Fifth Amendment rights during the federal attorney's fee trial. That is all. The guts of Hill's motion—the various allegations concerning Blue and Watkins—lack any evidentiary support and instead were supported only by allegation and unauthenticated attachments.

Hill now contends that only a proffer of evidence should be required, citing *Franks v. Delaware*, 438 U.S. 154 (1978). But, again, these are federal claims—and in *Armstrong*, the Supreme Court made clear that the requirement to obtain an evidentiary hearing or discovery in connection with prosecutorial misconduct claims is one of ***evidence***—not ***allegation***. The Court repeatedly used the word ***evidence*** to describe this burden:

> In order to dispel the presumption that a prosecutor has not violated equal protection, a criminal defendant must present clear ***evidence*** to the contrary.

> In this case we consider what evidence constitutes some ***evidence*** tending to show the existence of the discriminatory effect element.

> [I]n the absence of clear ***evidence*** to the contrary,

> courts presume that [prosecutors] have properly discharged their official duties.
>
> The vast majority of the Courts of Appeals require the defendant to produce some *evidence* that similarly situated defendants of other races could have been prosecuted, but were not, and this requirement is consistent with our equal protection case law.

*Armstrong*, 517 U.S. at 464, 465, 469 (emphasis added) (citations omitted) (internal quotation marks omitted). These repeated references to *evidence* were not carelessness. They reflect the presumption of good faith accorded to prosecutors—and the legal requirement that this presumption must be overcome by *evidence*.

*Armstrong* reflects the Supreme Court's directive for courts to avoid "slow[ing] law enforcement by subjecting the prosecutor's motives and decision-making to outside inquiry" or "undermin[ing] prosecutorial effectiveness by revealing the Government's enforcement policy." *Armstrong*, 517 U.S. at 465 (citations omitted). *Armstrong* also reflects judicial reluctance to intrude on a "special province" of the Executive Branch. *Id*. at 464 (citation omitted). The factors involved in prosecutorial discretion "are not readily susceptible to the kind of analysis the courts are competent to undertake." *Wayte*, 470 U.S. at 607.

An evidentiary hearing implicates these policy and separation-of-powers concerns to the same extent as discovery. It subjects a prosecutor's "motives and decisionmaking to outside inquiry," threatens to reveal "the Government's enforcement policy" for certain crimes, and entangles the judiciary in the "special province" of an Executive Branch official to determine whom to charge with criminal conduct. *Armstrong*, 517 U.S. at 464-65 (citations omitted). An evidentiary hearing is no less intrusive than discovery.

Hill cites no case applying the *Franks* "proffer of evidence" rule in the context of a claim for selective or vindictive prosecution. The State is unaware of any such case. That probably is because *Armstrong* sets the standard for these claims—and it requires *evidence*. In any event, Hill ignores that even under *Franks*, "[t]o mandate an evidentiary hearing, the challenger's attack my be more than conclusory and must be supported by more than a mere desire to cross-examine." *Franks*, 438 U.S. at 171.

Applying an evidentiary standard also comports with requirements for other constitutional claims in criminal cases. For example, evidence of a *prima facie* case is required "to qualify for an evidentiary hearing" on a double jeopardy claim. *United States v. Zone*, 403 F.3d 1101, 1106 (9th Cir.

2005). This standard would make particular sense here, where Hill claims he is entitled to dismissal with prejudice—as he would be for a double jeopardy violation.

Hill's proposed standard—relying on allegations rather than evidence—makes little sense. A clever jailhouse lawyer could fabricate allegations against any DA sufficient to support a *prima facie* case of selective prosecution. Under Hill's proposed standard, these fabricated allegations would force the DA to the stand despite their total lack of factual foundation. To hold that mere allegations support a defendant's request for an evidentiary hearing would result in the very dangers the Supreme Court sought to avoid in *Armstrong*.

In this case, no one can dispute Hill's failure to tender any substantive evidence before the hearing. He simply made accusations in a motion and attached a stack of documents. The Supreme Court has held that a criminal defendant alleging federal constitutional violations is not entitled to probe prosecutorial motive absent ***evidence*** making out a prima facie case of a violation. The trial court erred in allowing Hill an evidentiary hearing absent such ***evidence***.

Hill contends, for the first time, that his attachments constituted

admissible evidence. That, of course, is untrue. For example, media stories about SMU scholarships and grand jury policies are not party admissions (at least not of any party other than the newspaper publishing them). Similarly, none of Blue's text messages could be party admissions because she was not a party to the criminal case. And certainly no hearsay exception would apply to the unauthenticated telephone records. Hill's ethereal contention that he tendered admissible evidence is incorrect.

Under governing case law from the Supreme Court, the trial court had to presume that Watkins acted in good faith until Hill presented clear evidence to the contrary. Hill had to present such evidence as *a condition* of receiving an evidentiary hearing. Because Hill tendered no evidence before the hearing, the trial court abused its discretion in conducting evidentiary hearing.

## III. The trial court erred in dismissing the cases with prejudice.

A trial court generally lacks authority to dismiss a criminal case without the prosecutor's consent. *State v. Johnson*, 821 S.W.2d 609, 613 (Tex. Crim. App. 1991) (en banc); *State v. Plambeck*, 182 S.W.3d 365, 269 (Tex. Crim. App. 2005) (en banc). But an exception exists for prosecutorial

misconduct involving denial of federal constitutional rights. *See State v. Frye*, 897 S.W.2d 324, 330 (Tex. Crim. App. 1995) (en banc).

The U.S. Supreme Court has not determined "whether dismissal of the indictment, or some other sanction, is the proper remedy" for prosecutorial misconduct involving denial of equal protection or due process. *See Armstrong*, 517 U.S. at 461 n.2 (1996). But in the Sixth Amendment context, the Texas Court of Criminal Appeals has instructed trial courts that when a constitutional violation occurs they must "identify and then neutralize the taint by tailoring relief appropriate in the circumstances" to restore constitutional compliance. *Frye*, 897 S.W.2d at 330 (quoting *United States v. Morrison*, 449 U.S. 361, 365 (1981)).

Under this rule, dismissal is proper only "where the trial court is unable to identify and neutralize the taint by other means." *Id.* (citation omitted). The basic question, then, is whether re-indictment of Hill could occur consistent with constitutional principles. *See, e.g.*, *Cook v. State*, 940 S.W.2d 623, 627-28 (Tex. Crim. App. 1996) (en banc) (remand appropriate because retrial possible consistent with constitutional principles despite taint of misconduct). This mirrors the general rule in cases involving trial errors, where courts hold that reversing the conviction and providing "a new trial

free of prejudicial error normally are adequate means of vindicating the constitutional rights of the accused." *United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 268 (1982).

In this case, the purported taint was presentation to the grand jury based on impure motives. The remedy, then, was dismissal of the indictments procured by that presentation—not a permanent bar to prosecution of Mr. Hill's criminal conduct. Some constitutional violations, for example the prohibition against double jeopardy, implicate a right not to be tried at all. But a due process violation caused by prosecutorial misconduct is not a violation of a right not to be tried. *See generally Hollywood Motor Car*, 458 U.S. at 268. Thus dismissal with prejudice—a drastic remedy "rarely seen in criminal law, even for constitutional violations"—was inappropriate. *Reed v. Farley*, 512 U.S. 339, 368 (1994) (Blackmun, J. dissenting).

In this case, the trial court could have dismissed the purportedly tainted indictments without prejudice and required the State to procure new ones. "Dismissal without prejudice is not a toothless sanction: it forces the Government to obtain a new indictment if it decides to reprosecute, and it

exposes the prosecution to dismissal on statute of limitations grounds." *United States v. Taylor*, 487 U.S. 326, 342 (1988).

The trial court relied heavily—both during the hearing and in its findings—on the decision in *Terrazas*. But in *Terrazas*, the court of appeals held that the trial court abused its discretion in dismissing an indictment with prejudice when the claimed taint was curable by dismissing without prejudice and forcing the DA to start anew in deciding whether to seek indictments. *Terrazas*, 970 S.W.2d at 160. Similarly, most federal courts addressing prosecutorial misconduct at the grand jury stage hold that dismissal without prejudice is an appropriate remedy. *See, e.g.*, *United States v. Slough*, 679 F. Supp.2d 55, 61 (D.D.C. 2010); *United States v. Lawson*, 502 F. Supp. 158, 172 (D. Md. 1980); *United States v. Feurtado*, 191 F.3d 420, 424-25 (4th Cir. 1999); *United States v. Gold*, 470 F. Supp. 1336 (N.D. Ill. 1979); *United States v. Breslin*, 916 F. Supp. 438, 446 (E.D. Pa. 1996); *United States v. Omni Int'l Corp.*, 634 F. Supp. 1414, 1440 (D. Md. 1986).

The trial court's order of dismissal with prejudice went too far under these circumstances. "While defendants are entitled to the remedy of dismissal for violations of their constitutionally protected rights, they are not entitled to the reward of permanent immunity respecting their alleged

criminal conduct . . . [T]he costs to society are simply too high." *Lawson*, 502 F. Supp. at 173.

Had the trial court dismissed the cases without prejudice, Watkins could have pursued new indictments unshackled by any motive to assist Blue. Alternatively, he could have appointed a prosecutor pro tem to decide whether to pursue new indictments. TEX. CODE. CRIM. PROC. ANN. art. 2.07(a) & (b-1) (West 2005). No taint would apply to a prosecutor pro tem, who is considered a substitute for the district attorney rather than a subordinate. *See, e.g., State v. Newton*, 158 S.W.3d 582, 585-86 (Tex. App.—San Antonio 2005, pet. dism'd); *State v. Ford*, 158 S.W.3d 574, 576-77 (Tex. App.—San Antonio 2005, pet. dism'd); *Stephens v. State*, 978 S.W.2d 728, 731 (Tex App.—Austin 1998, pet. ref'd).

In this case, nothing prevents new indictments consistent with due process and equal protection guarantees. As a result, "[a] dismissal with prejudice is simply constitutional overkill." *State v. Terrazas*, 962 S.W.2d 38, 45 (Tex. Crim. App. 1998) (en banc) (Keller, J., dissenting). A Texas trial court abuses its discretion by granting relief beyond that necessary to neutralize the taint of any constitutional violation. *See id.* at 42. Because

dismissal without prejudice would have neutralized the purported taint, the trial court abused its discretion in dismissing the indictments with prejudice.

## Conclusion

As he has throughout this case and the federal lawsuit, Hill makes wild claims about what the evidence "overwhelmingly" establishes without ever actually pointing to evidentiary support for the vast majority of his allegations—and certainly none of the critical allegations supporting his legal claims. Recognizing that Hill's claims are based on speculation, the court of appeals properly reinstated the indictments. Its decision should be affirmed.

Respectfully submitted,

/s/Charles "Chad" Baruch

Texas Bar No. 01864300
**JOHNSTON ◊ TOBEY, P.C.**
3308 Oak Grove Avenue
Dallas, Texas 75204
Telephone: (214) 741-6260
Facsimile:  (214) 748-9217
Email: chad@jtlaw.com

**District Attorney Pro Tem**
**Dallas County, Texas**

*Counsel for Appellant*

**Certificate of Compliance**

This brief was prepared using Microsoft Word for Mac. Relying on the word count function in that software, I certify that this brief contains 10,990 words.

/s/Charles "Chad" Baruch
Attorney for Appellant

**Certificate of Service**

The undersigned certifies that a true and correct copy of this instrument was served this 9th day of September, 2015, by email and efiling upon the following counsel of record for appellee:

George R. Milner III
MILNER FINN PRICE
2828 North Harwood Street, Suite 1950
Dallas, Texas 75201
ItsRainingII@aol.com

Michael Mowla
603 North Cedar Ridge, Suite 100
Duncanville, Texas 75116
michael@mowlalaw.com

L.T. (Butch) Bradt
14015 S.W. Freeway, Suite 4
Sugar Land, Texas 77478
ltbradt@flash.net

/s/Charles "Chad" Baruch